UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BKCAP, LLC, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CAUSE NO. 3:07-CV-637 CAN |
| | ) |
| CAPTEC FRANCHISE TRUST 2000-1, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

### I. PROCEDURE

On October 15, 2007, Plaintiffs BKCAP, LLC, *et al.* (collectively "the Borrowers") filed their complaint in state court alleging that Defendant Captec Franchise Trust 2000-1 (the "Lender") had committed a breach of contract or alternatively seeking a declaratory judgment regarding a contract between the parties.

On December 28, 2007, the Lender removed this action to this Court, and on January 4, 2008, Lender filed its answer to the Borrowers' complaint. On February 19, 2008, this Court held a Fed. R. Civ. P. 16(b) conference, and this Court set deadlines for filing dispositive motions. The Court did not set deadlines for discovery because the parties indicated that the preliminary issue may be one of law, and depending upon how this Court resolved that issue, there may not be a need to conduct any discovery.

On March 26, 2008, the parties filed cross motions for summary judgment. On April 30, 2008, the parties filed their respective responses to the motions for summary judgment. On July 25, 2008, this Court heard oral arguments on the pending cross motions for summary judgment.[1]

---

[1] In the Lender's motion for summary judgment, they also seek relief as to the Borrowers' contract claim. However, because there are issues as to whether that claim is ripe and because the Court need not resolve that issue at this time, this Court will only consider the Lender's motion as it pertains to the Borrower's declaratory judgment

The Court now enters the following ruling on all pending matters, and this Court may enter such a ruling pursuant to the parties' consent and 28 U.S.C. 636(c).

    A.    <u>Lender's Motion to Strike</u>

On April 30, 2008, the Lender also filed a Fed. R. Civ. P. 56 motion to strike an affidavit submitted by the Borrowers. The Borrowers did file an objection to that motion, but because this Court has resolved the cross motions in the Lender's favor even after considering all of the parties' submissions, that motion is **DENIED AS MOOT** [Doc. No. 31].

**II.**    **ANALYSIS**

    A.    <u>Facts</u>

Quality Dining is an Indiana corporation, which owns and operates restaurants like Burger King and Chili's. In the Spring and Summer of 1999, Quality Dinging refinanced a significant portion of its $110 million dollar bank debt. It arranged to refinance $49 million with Captec Financial Group, Inc., (the "Lender").[2]

Lender originated 18 loans, all of which utilized identical forms of notes, mortgages, and other loan documentation. Quality Dining formed 12 special purpose entities, each of which was an indirect, wholly owned subsidiary of Quality Dining, to facilitate the loans. These entities include the Borrowers, who are the Plaintiffs in this lawsuit, and only subsidiary borrowing entities relevant for purposes of the summary judgment issues.

---

action.

    [2]The actual Defendant, Captec Franchise Trust 2000-1, is a trust entity that manages the loan on behalf of the lender. Plaintiffs indicate "The 'Trust' is currently, and was at all times mentioned . . . the owner of the Notes and Mortgages described above." Thus, the "Trust" is in effect "the Lender."

On August 3, 1999, the Borrowers executed eighteen promissory notes, and each note secured to the Lender lien rights. Five of eighteen loans were reassigned to another servicing agent, and as a result, those loans are not in dispute in this action. Another of the loans was resolved between the parties. Thus, only twelve loans remain in dispute in this lawsuit. All of which have identical contract language, but they are for different amounts. The value of each loan is approximately $1 million.[3]

All of the notes contained paragraph three that provided that the loans could not be pre-paid unless the Borrowers paid a prepayment premium. However, this clause only applied to the first ten years of each note's life. Each note was for a longer period of time, usually either fifteen or twenty years. The prepayment premium paragraph provided that if the Borrowers prepaid the loan within the first ten years they were required to pay a prepayment premium.

On July 3, 2007, the Borrowers provided the Lender written notice of their intention to prepay the notes. Because the 10th year anniversary for the notes would have been in October of 2009, the Borrowers must pay the prepayment premium. The question the Court must resolve is how to calculate the prepayment premium. The parties disagree on the correct interpretation of the prepayment premium provisions of the promissory notes.

As of this time, the Borrowers have not actually paid the Lender any amount of prepayment premium. Instead, on October 15, 2007, the Borrowers filed a declaratory judgment action seeking the correct interpretation of the prepayment premium clause.

---

[3]The Court refers to Doc. No. 24-2 at 2 as representative of all quoted contract language. All of the contracts have identical language, but all quoted contract language derives from Doc. No. 24-2.

B.  Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001).  In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999).  To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings.  Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986);  Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000).  Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Serv.s Co., 391 U.S. 253, 289 (1968)).

C.  Cross Motions for Summary Judgment[4]

The Lender and Borrowers disagree on how to interpret the prepayment premium paragraph of their contracts.  The issue this Court must resolve is whether the language from

---

[4]This Court finds that diversity jurisdiction is appropriate between each party pursuant to 28 U.S.C. § 1332..  As a result, this Court must apply the law of the respective states upon which each contract action is based. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Land v. Yamaha Motor Corp., 272 F.3d 514, 516 (7th Cir. 2007).  However, this Court finds, and the parties agreed at the oral argument, that there is no substantive difference in the state law of the jurisdictions at issue.

paragraph three is ambiguous, and if it is not, this Court must provide a reasonable interpretation of the contract language.

The primary goal in contract interpretation is to ascertain and effectuate the intent of the contracting parties. Village Commons, LLC v. Marion County Prosecutor's Office, 882 N.E.2d 210, 215 (Ind. Ct. App. 2008); Rasheed v. Chrysler Corp., 517 N.W.2d 19, 29 n. 28 (Mich. 1994); Bar on the Pier, Inc. v. Bassinder, 818 A.2d 424, 428 (N.J. Super. 2003); Jarl Investments, L.P. v. Fleck, 937 A.2d 1113, 1122 (P. Super. 2007). To achieve this goal the Court begins with examining the language of the contract. The initial interpretation and construction of contract provisions in determining whether the language is ambiguous is a function for the courts. Klitz v. Klitz, 708 N.E.2d 600, 602 (Ind. Ct. App. 1999); UAW-GM Human Resource Center v. KSL Recreation Corp., 579 N.W.2d 411, 414 (Mich. Ct. App. 1998); Schor v. FMS Financial Corp., 814 A.2d 1108, 1112 (N.J. Super. 2002); Jarl Investments, L.P., 927 A.2d at 1122. If the language from the contract is not ambiguous, the intent of the parties is determined from the four corners of the document. Cummins v. McIntosh, 845 N.E.2d 1097, 1106 (Ind. Ct. App. 2006); UAW-GM Human Resource Center, 579 N.W.2d at 414 (Mich. Ct. App. 1998); Schor, 814 A.2d at 1112; Greene v. United Serv.s Auto Ass'n, 936 A.2d 1178, 1185 (Pa. Super. 2007). Only when the language of a contract is ambiguous, or reasonably susceptible to more than one interpretation may this Court consider extrinsic evidence to glean the parties' intent. Cummins, 845 N.E.2d at 1106; UAW-GM Human Resource Center, 579 N.W.2d at 414 ("A contract is ambiguous if 'its words may reasonably be understood in different ways.'"); Schor, 814 A.2d at 1112; Greene, 936 A.2d at 1185.

The relevant language of the contract reads as follows:

> Lender shall not be required to accept any tender of prepayment of the principal balance of this Note at any time during the first ten (10) "loan years" when the "Reinvestment Rate . . . is lower than the Stated Rate unless the Lender also receives from the Borrower a sum of money (the "Prepayment Premium") which shall be equal to the positive difference between the present value (computed at the Reinvestment Rate) of the stream of monthly payments of principal and interest under this Note from the date of the prepayment through the tenth (10th) anniversary of the First Full Payment Date at the Stated Rate (without duplication of either the Default Rate or the late charge set forth in Section 4 below) and the outstanding principal balance of this Note as of the date of prepayment (the "Differential").

(Doc. No. 24-2 at 2). Although the language and grammar are awkward, this Court finds that the contract language is not ambiguous. First, the language "equal to the positive difference between" indicates that the parties are to subtract one value from a second value. To determine where the values are split in the language, the operative word is the conjunction "and." The second "and" in the paragraph, prior to the phrase beginning with "the outstanding principal," denotes where the language has finished describing the first value and begins describing the second. Consequently, the first value is the present value of the stream of monthly payments of principal and interest, which is computed at the reinvestment rate, and the second value is the outstanding principal balance. Stated another way, the language reads as the following formula:

> The prepayment premium shall equal;
>
> (a) the positive difference between the present value (computed at the Reinvestment Rate) of the stream of monthly payments of principal and interest under this Note from the date of the prepayment through the tenth (10th) anniversary of the First Full Payment Date at the State Rate
>
> and (subtracting)
>
> (b) the outstanding principle balance of this Note as of the date of the prepayment.

Giving the language its plain and ordinary meaning, this is the only reasonable interpretation of the contract language.

The Borrowers unpersuasively argue that the contract can only reasonably be interpreted another way. The Borrowers claim the language creates a different formula. Their formula can be expressed as follows:

> The prepayment premium shall be the positive difference between:
>
> a. The present value (computed at the "Stated Rate") of the stream of monthly payments of principle and interest under the Note from the date of prepayment through the tenth (10th) anniversary of the First Full Payment Date; and
>
> b. The present value (computed at the "Reinvestment Rate") of the same stream of monthly payments of principle and interest under the Note from the date of prepayment through the tenth (10th) anniversary of the First Full Payment Date.

The Borrowers' interpretation is, however, unreasonable. To generate the Borrowers' formula requires a strained and contorted reading of the contract language. While Borrowers agree that the language denotes a "difference" or subtraction as to two values and while they also agree that one of the values is the stream of monthly payments of interest and principal of the present value computed at the reinvestment rate, they however derive a different second value. More specifically, Borrowers derive a second value of "a stream of monthly payments of principal and interest computed at the <u>Stated Rate</u>." (emphasis added). The Borrowers' second value does not flow directly from the language of the contract. Rather, it is as though Borrowers have highlighted portions of the language, such as the "Stated Rate" and reapplied it to language that describes the first value regarding the Reinvestment rate. For such a reading to be reasonable, there would need to at least be an operative word that indicates that the language is beginning to describe the second value. But, the Borrowers do not and cannot point to a conjunction like "and" which would indicate the second value for which the "the Stated Rate" is simply subtracted because one does not exist.

7

Also, Borrowers' formula ignores the second "and" and the phrase beginning with the language "the outstanding principal." In an attempt to explain why Borrowers ignore the second "and," Borrowers indicate that the phrase following it, beginning with the language "the outstanding principal," is simply a reminder to the parties that the entire principal is also due as well as the prepayment premium. However, this explanation is also unpersuasive because the phrase is part of the entire sentence beginning with the language "shall be equal to the difference between." If the statement were simply a reminder, it would be a separate sentence rather than part of the sentence that defines the operative formula.

Simply put, this Court is not persuaded that the Borrowers' interpretation of the contract is reasonable. Rather, as previously stated, this Court concludes that the contract's prepayment premium language, giving the terms their plain and ordinary meaning, is reasonable and, therefore, not ambiguous.

Essentially, this Court's interpretation of the contract is the same as the Lender's. The Borrowers argue that the Court should not accept the Lender's interpretation because it includes terms not included in the contract language. Specifically, while the Lender interprets the contract language to yield the same formula as the Court does, they also include a final balloon payment in their formulaic calculation. Because the contract is silent as to a balloon payment, the Borrowers argue that a balloon payment cannot be included in any formula derived from the language of the contract.

While it is correct that the contract does not specifically mention a ballooned payment, the contract contains language which suggests the inclusion of such a ballooned payment. At the very beginning of paragraph three, the contract states,

> [b]orrower shall have the right to prepay <u>all</u>, but not a portion of, the principal balance of this Note together with accrued interest.

8

(emphasis added). A court is not to interpret a contract provision in isolation, but rather, it is to read the contract so that all of its provisions are harmonious. Owens v. State, 886 N.E.2d 64, 67 (Ind. Ct. App. 2008); Royal Property Group, LLC v. Prime Ins. Syndicate, Inc., 706 N.W.2d 426, 434 (Mich. Ct. App. 2005); Morrison v. American Intern. Ins. Co. of Am., 887 A.2d 166, 172 (N.J. Super. 2005); Delaware County v. Delaware County Prison Employees County Union, 713 A.2d 1135, 1139 n.2 (Pa. 1998) (citations omitted). Including a ballooned payment to include all remaining principal with the final payment is consistent with paying all of the principal balance due under the note. If a ballooned payment were not included, the stream of monthly payments would be significantly lower than the entire remaining principal, and run contrary to the provision of the note that requires all of the principal to be paid.

Also, there is a more important reason why a ballooned payment must included in calculating the prepayment premium. If such a payment were not included, the result would be an absurdity. If the plain and ordinary meaning of a contract's language would lead to an absurd result, the grammatical and ordinary sense of a contract may be modified so as to avoid the absurdity, "but no further." USA Life One Ins. Co. of Ind. v. Nuckolls, 682 N.E.2d 534, 539 (Ind. 1997); see also Wembelton Development Co. v. Travelers Ins. Co., 206 N.W.2d 222, 225 (Mich. Ct. App. 1973) ("Courts will not interpret a contract in a manner which would impose an absurd or impossible condition."); Le Duc v. J.T. Baker Chemical Co., 92 A.2d 487, 490 (N.J. Super. 1952) (indicating that when language creates an absurd result, it will not be enforced); Stamerro v. Stamerro, 889 A.2d 1251, 1258-59 (Pa. Super. 2005) ("Before a court will interpret a provision in . . . a contract in such a way as to lead to an absurdity . . . it will endeavor to find an interpretation which will effectuate the reasonable result intended.").

9

The parties specifically included the prepayment premium as specific bartering tool that provided a benefit to both parties. The Stated Rate of the notes was at approximately 9% when the parties entered into the contracts in 1999. Borrowers foresaw that if interests rates dropped, they may want to re-finance their debt under the notes. Lender would lose funds and possible even suffer a loss if Borrowers re-financed too early. Therefore, the parties created a prepayment premium, which allowed Borrowers the freedom to re-finance if they paid a sum of money to the Lender to cover its loses. A portion of paragraph three memorializes this intent and states:

> Borrower acknowledges and agrees that Lender is making the loan evidenced by this Note in consideration of the receipt by Lender of all interest and other benefits intended to be conferred by this Note, and if payments of principal are made to Lender prior to the regularly scheduled due date of such payments, for whatever reason . . . Lender will not receive all such interest and other benefits and may incur additional costs. <u>For these reasons</u>, and to induce Lender to make the loan, Borrower expressly waives any right to prepay the note except as specifically provided herein or in. . . .

(emphasis added). However, and herein lies the absurdity, if the parities configured the prepayment premium under the formula this Court has concluded is appropriate but did not include a final balloon payment, the value arrived at always yields a negative figure. In other words, so long as the interest rate is below the Stated Rate of the note, the note would never yield a prepayment premium absent a balloon payment. The only time a positive number would be reached is if interest rates were higher than the Stated Rate. Clearly, the parties did not intend this result, because the Borrowers would <u>only</u>, as a matter of common sense, refinance if the interest rates were lower than the Stated Rate and not higher. Yet to draft a prepayment premium clause and than have it yield no amount in those situations when Borrowers would likely refinance or pay off the loans early is simply absurd and contrary to the parties' intent. Borrowers even admitted at the in-court hearing that the parties specifically contemplated some

type of a positive value as a prepayment premium. Consequently, to avoid an absurd result, this Court finds that the language of the contract that refers to a "stream of monthly payments of principal and interest" includes a final ballooned payment as a part of that stream.

In summary, this Court finds that there is language that supports the inclusion of a final ballooned payment in the stream of monthly payments, and furthermore, the absence of the ballooned payment would create an absurd result that is contrary to the parties' intent that some type of prepayment premium accompany early prepayment.

### III.  CONCLUSION

The contract language is not ambiguous, and Borrowers have failed to establish that all or portions of it are. As a matter of law, this Court finds that the Lender's interpretation of the contract, including the inclusion of a balloon payment, is correct because not to include a balloon payment would yield an absurd result. Consequently, the Borrowers' motion for summary judgment is **DENIED** [Doc. No. 22] and the Lender's motion for summary judgment as to Plaintiff's declaratory judgment action is **GRANTED** [Doc. No. 25].

**SO ORDERED.**

Dated this 12th Day of August, 2008.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge