UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BKCAP, LLC, GRAYCAP, LLC, and SWCAP, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CAUSE NO. 3:07-cv-637 ) |
| CAPTEC FRANCHISE TRUST 2000-1, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

### I. INTRODUCTION

This case is a recurring lesson on the importance of carefully drafted contract provisions. Before the Court is a flurry of motions arguing over essentially one line in the attorney fee provision existing within a series of twelve loan agreements. In the cross motions for summary judgment (Docket # 106, 108), the Defendant[1] claims that under the unambiguous language of the agreements, the Plaintiffs (also referred to as the "Borrowers") are obligated to pay its attorney fees incurred in any dispute. The Plaintiffs, however, claim that the agreements clearly allow the Defendant to recover its fees only when it is "enforcing" its rights and that responding to a lawsuit does not constitute enforcement. The parties have also filed cross motions to strike their opponent's supporting affidavits (Docket # 111, 118) and the Defendant has requested oral argument. (Docket # 110.)

The Court finds that the clear and unambiguous language of the loan agreements provides for the recovery of fees only when the Lender affirmatively takes action to enforce its rights

---

[1] For ease of reference, Captec Franchise Trust will also be referred to as the "Lender," even though it is an assignee of the original lender. *See BKCAP, LLC v. Captec Franchise Trust 2000-1*, No. 3:07-cv-637, 2008 WL 3833939, at *1 (N.D. Ind. Aug. 12, 2008), *rev'd*, 572 F.3d 353 (2009).

against the Borrowers and that defending against a declaratory judgment action and breach of contract claim does not constitute enforcement. Accordingly, the Plaintiffs' motion for partial summary judgment will be GRANTED and the Defendant's motion will be DENIED. Both motions to strike are moot. Similarly, the Defendant's motion for oral argument is DENIED.[2]

## II. FACTUAL AND PROCEDURAL HISTORY

In 1999, the Borrowers obtained thirty-four different loans totaling forty-nine million dollars from Captec Financial (eighteen loans) and GE Capital (sixteen loans) to help finance various restaurants they own in Indiana, Michigan, and Pennsylvania. (Pls.' Br. in Sup. of Mot. for Partial Summ. J. ("Pls.' Br.") 3.) The sixteen GE Capital loans are not at issue in this action. Five of the eighteen Captec Financial loans were assigned to a third party and are not in dispute. (*Id*.) One of the other original Captec Financial loans involved a property that was damaged in a fire and is also not in dispute. (*Id*.)

This action concerns the remaining twelve loans.[3] (Def.'s Br. in Supp. of Mot. For Partial Summ. J. ("Def.'s Br.") 4.) These twelve notes have been assigned to the present Defendant, Captec Franchise Trust 2000-1, a successor in interest to Captec Financial. (Compl. ¶ 10.)[4] Section 3 of each note provides that if the Borrowers wish to prepay the outstanding balance of the loan during the first ten years of its life, they must pay a "Prepayment Premium."

---

[2] Since the parties have exhaustively briefed the issues, no oral argument is deemed necessary. See N.D. Ind. L. R. 7.5(a) ("The granting of a motion for oral argument shall be wholly discretionary with the court.").

[3] The Court earlier treated Loan No. 8907 (*see* Docket # 24-2) as "representative of all quoted contract language. All of the contracts have identical language, but all quoted contract language derives from Docket # 24-2." *BKCAP, LLC*, 2008 WL 3833939, at *1.

[4] The notes contain a choice of law provision that applies the law of the state where the collateral (i.e., the restaurant) is located. Among the twelve notes at issue, seven are secured by restaurants in Michigan, four by restaurants in Indiana, and one by a restaurant in Pennsylvania.

2

(Docket # 24-2.)

In April 2007, the Borrowers indicated a desire to prepay the notes but the parties disagreed over the precise computation of the prepayment premium. (Compl. ¶¶ 15-17.) The Borrowers subsequently filed suit on October 15, 2007, asking the Court to both "declare the proper computation of the prepayment premium due from Borrowers," declare it due (Count I) and then find the Lender in breach of the loan agreements for demanding an excessive prepayment premium (Count II). (Compl. ¶¶ 19, 21.) The parties then filed cross-motions for summary judgment on their competing interpretations. (Docket # 22, 25.)

Magistrate Judge Nuechterlein granted summary judgment in favor of the Lender, finding that the prepayment clause was unambiguous and that the Lender's interpretation was correct. *BKCAP, LLC*, 2008 WL 3833939, at *6. The Borrowers promptly appealed to the Seventh Circuit Court of Appeals, which held that the clause was actually ambiguous and remanded the case to this Court for trial on the issue of the parties' intended method of calculating the prepayment premium. *BKCAP, LLC v. Captec Franchise Trust 2000-1*, 572 F.3d 353, 362 (7th Cir. 2009).

On remand, the interpretation of the prepayment premium remains pending for trial. This matter is now before the Court, however, on the separate issue of whether under Section 9 of the Loan Agreements, the Lender is entitled to recover its attorney fees from the Borrowers.[5] Section 9 provides in full:

> 9. REIMBURSEMENT OF EXPENSES. Borrower shall reimburse Lender for all costs and expenses, including attorneys' fees, incurred by Lender <u>in enforcing the rights</u>

---

[5] This is not the first time that the Lender has attempted to recover its attorney fees. A previous motion (Docket # 49) was denied without prejudice and without addressing the merits because of the pending appeal to the Seventh Circuit Court of Appeals. (Docket # 68.)

3

of Lender under this Note or the other Loan Documents. Such costs and expenses shall include without limitation costs or expenses incurred by Lender in any bankruptcy, reorganization, insolvency or other similar proceeding. Any reference in this Note to attorneys' fees shall mean reasonable fees, charges, costs and expenses of outside counsel and paralegals, whether or not a suit or proceeding is instituted, and whether incurred at the trial court level, on appeal, in a bankruptcy, administrative or probate proceeding, in consultation with counsel, or otherwise.

(Docket # 24-2) (emphasis added.)

The Lender alleges that the unambiguous language of Section 9 requires the Borrowers to reimburse the Lender for any attorney fees incurred in defending against their lawsuit. The Lender claims that the contract's grant of fees incurred in "enforcing the rights of Lender" covers any dispute arising between the parties, regardless of its substance or who initiates it. Thus, as the Lender sees it, even though the Borrowers were never declared in default and only filed suit seeking a declaratory judgment, and in fact contend that it was the Lender who breached the contracts, they should still be forced to pay Lender's attorney fees.

The Borrowers, however, argue that Section 9's use of "enforcing" plainly restricts the Lender's reimbursement of fees to situations where it must affirmatively take some sort of coercive action because of a default or other misconduct. Accordingly, they claim that their declaratory judgment and breach of contract action does not implicate the fee reimbursement provision. The Borrowers further point to the American rule's general presumption that parties pay their own attorney fees and argue that the notes' fee shifting provision should be narrowly construed. The Court now turns to those arguments.

### III. THE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

*A. Standard of Review*

Summary judgment is proper when "the pleadings, the discovery and disclosure materials

4

on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005).

When ruling on a motion for summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a fact finder." *Payne*, 337 F.3d at 770. The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id*.; *Waldridge v. Am. Hoechst Corp*., 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable fact finder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id*. at 771.

"When cross-motions for summary judgment are filed, courts "look to the burden of proof that each party would bear on an issue of trial; [courts] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *M.O. v. Ind. Dept. of Educ*., No. 2:07-CV-175-TS, 2009 WL 857548, at *3 (N.D. Ind. Mar. 31, 2009) (alteration in

5

original) (citing *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). "The contention of one party that there are no issues of material fact sufficient to prevent the entry of judgment in its favor does not bar that party from asserting that there are issues of material fact sufficient to prevent the entry of judgment as a matter of law against it." *Id.* (citation omitted); *see Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984). "It is true that cross-motions for summary judgment do not waive the right to a trial, but this rule does not alter the respective burdens on cross-motions for summary judgment—more particularly here, the responsive burden of a plaintiff who moves for summary judgment and is confronted with a cross-motion for summary judgment. The motions are treated separately." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 (7th Cir. 2008) (citations omitted); *M.O.*, 2009 WL 857548, at *3.

## B. Discussion

The Lender claims that the loan agreement's grant of attorney fees incurred in "enforcing" rights, allows for the recovery of fees in the event of any legal proceeding or dispute, regardless of its subject matter or who brings it. In particular, the Lender argues that it should recover its fees in the present dispute where it is defending against the Borrowers' declaratory judgment and breach of contract claims. The Plaintiffs counter that the agreements only permit recovery when the Lender "enforces" its rights by taking some sort of affirmative and coercive action—generally after a default—and therefore the attorney fee provision simply does not apply.

Because the loan agreements are in derogation of the long-standing "American rule" that parties pay their own attorney fees, they must be narrowly construed. With this principle in mind, the Court finds that the notes unambiguously allow an award of fees only when the Lender

6

"enforces its rights"—that is, when it is forced to affirmatively take some sort of coercive action to compel the Borrowers' obedience and assert its rights. The Lender may not therefore recover attorney fees incurred in defending against this declaratory judgment and breach of contract suit brought against it by the Borrowers.

1. The American Rule Generally Prohibits the Recovery of Attorney Fees

In the United States, it is a time-honored legal principle that the parties to a lawsuit generally bear their own costs of litigation. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health*, 532 U.S. 598, 602-3 (2001). This so-called "American rule" presumes that attorney fees are not recoverable as costs or damages, unless specifically allowed by statute, agreement between the parties, or narrow common law exception. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007); *King v. Ill. St. Bd. of Elections*, 410 F.3d 404, 412 (7th Cir. 2005); *Smith v. Khouri*, 751 N.W.2d 472, 477 (Mich. 2008). The American rule is followed in every state except Alaska, which has specifically abrogated the rule by statute. Ak. R. Civ. P. 82(a); *Edwards v. Alaska Pulp Corp.*, 920 P.2d 751, 755 (Ak. 1996) ("Alaska is the only state that does not follow the American rule.")

Indeed, the American rule is hardly a modern creation, but rather has been a fixture of American jurisprudence for over two hundred years. As early as 1796, the Supreme Court recognized the importance of making parties bear their own costs of litigation. "We do not think that [the recovery of attorney fees] ought to be allowed. The general practice of the United States is in opposition to it; and even if that practice were not strictly correct in principle, it is entitled to the respect of the court, till it is changed, or modified, by statute." *Arcambel v. Wiseman*, 3 U.S. 306 (1796). *See also Hauenstein v. Lynham*, 100 U.S. 483, 490-491 (1880);

*Mo. Pac. R. Co. v. Larabee*, 234 U.S. 459, 468 (1914).

At its heart, the rule reflects several fundamental principles of the American legal system. "In support of the American rule, it has been argued that since litigation is at best uncertain, one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967). "Another, more pragmatic justification for the American rule is that it avoids the time, expense and difficulties of proof inherent in any judicial assessment of what amount in attorneys' fees it would be reasonable to impose upon the unsuccessful litigant." *Syanon Found., Inc. v. Bernstein*, 517 A.2d 28, 36 (D.C. 1986) (citing *Fleischmann*, 386 U.S. at 718.) "Finally, there is the possibility of a threat being posed to the principle of independent advocacy by having the earnings of the attorney flow from the pen of the judge before whom he argues." *F.D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc.*, 417 U.S. 116, 129 (1974).

Because any statute allowing for the recovery of attorney fees is in derogation of the common law, it must be narrowly construed, *see Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 35 (1983), and courts have frequently applied this same rationale to fee provisions in contracts. *See Chicago Southshore & South Bend R.R. v. Itel Rail Corp.*, 658 N.E.2d 624, 634 (Ind. Ct. App. 1995) ("Where a contract authorizes attorney's fees, the award is limited to those expressly provided for in the contract."); *Fleet Bus. Credit v. Krapohl Ford Lincoln Mercury Co.*, 735 N.W.2d 644, 647-48 (Mich. Ct. App. 2007) ("Exceptions to the [American rule] are narrowly construed."); *Profit Wise Mktg. v. Wiest*, 812

8

A.2d 1270, 1275 (Pa. Super. Ct. 2002) (narrowly reading attorney fee provision based on plain meaning of word "prevail").[6]

Indiana, Michigan, and Pennsylvania are no exception to the American rule's presumption that parties pay their own attorney fees. *See Courter v. Fugitt*, 714 N.E.2d 1129, 1132 (Ind. Ct. App. 1999); *Burnside v. State Farm Fire & Cas. Co.*, 528 N.W.2d 749, 751 (Mich. Ct. App. 1995); *McMullen*, 985 A.2d at 775. In addition to being a fixture of their common law, Indiana and Michigan have codified the general rule by statute. *See* Ind. Code § 34-52-1-1(b) (1999); Mich. Comp. Laws § 600.2405 (2000). All three jurisdictions, of course, permit litigants to make agreements for the recovery of attorney fees, *Courter*, 714 N.E.2d at 1132; *Burnside*, 528 N.W.2d at 751; *McMullen,* 985 A.2d at 775, yet they generally construe such deviations from the American rule narrowly. *See Chicago Southshore*, 658 N.E.2d at 634; *Fleet Business Credit*, 735 N.W.2d at 647-48; *Profit Wise Mktg.*, 812 A.2d at 1275.

2. The Loan Agreements Do Not Permit the Recovery of Attorney Fees in this Dispute.

The twelve promissory notes at issue do not permit the Lender to recover its attorney fees expended in defending against this declaratory judgment and breach of contract action brought by the Borrowers. The plain language of the notes, especially when considered under the ever-

---

[6] Courts across the nation have frequently followed the "narrow construction" model of interpreting attorney fee provisions. *See Oscar Gruss & Son, Inc.,* 337 F.3d 186, 199 (2d. Cir. 2003) ("Accordingly, while parties may agree that attorneys' fees should be included as another form of damages, such contracts must be strictly construed to avoid inferring duties that the parties did not intend to create."); *Kim v. Kang*, 154 F.3d 996, 1001 (9th Cir. 1998) (denying fees because contract only allowed them when complaint "instituted to collect sum due Broker."); *Sholkoff v. Boca Raton Cmty. Hosp., Inc.*, 693 So.2d 1114, 1118 (Fla. Dist. Ct. App. 1997) ("[I]f an agreement for one party to pay another party's attorney's fees is to be enforced it must unambiguously state that intention and clearly identify the matter in which the attorney's fees are recoverable."); *McGuire v. City of Jersey City*, 593 A.2d 309, 317 (N.J. 1991) (narrowly construing contract's fee shifting provision); *Vacation Vill. Homeowners' Ass'n, Inc. v. Mordkofsky*, 679 N.Y.S.2d 435, 437 (N.Y. App. Div. 1998) (holding that fee shifting provision must be narrowly construed); *4447 Assocs. v. First Sec. Fin.*, 973 P.2d 992, 998 (Utah Ct. App. 1999) (allowing fees "only in accordance with the explicit terms of the contract and only to the extent permitted by the contract").

9

present influence of the American rule, only allows the Lender to recover its fees when it "enforces" its rights—i.e., when the Lender is affirmatively forced to take some sort of coercive action (more often than not by the Borrowers' default) to compel the Borrowers to comply with the loan agreements. The notes do not contemplate the award of fees when it is the Borrowers who take action without having been declared in default and attempt to enforce their rights under the contract by bringing declaratory judgment and breach of contract claims against the Lender.

In Indiana, Michigan, and Pennsylvania, the goal of contract interpretation is to ascertain the intent of the parties. *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind. 2004); *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 113 (Mich. 2005); *Ins. Adjustment Bureau v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006). In interpreting written contracts, the intent of the parties is determined by looking first to the plain and ordinary meaning of the contract language. *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534, 538 (Ind. 1997); *City of Grosse Pointe Park*, 702 N.W.2d at 113; *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004). If the contract language is clear and unambiguous, the court must interpret the contract without considering extrinsic evidence. *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 753-54 (7th Cir. 2006) (applying Indiana law); *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 454 (Mich. 2003); *Ins. Adjustment Bureau*, 905 A.2d at 468-69. If, however, the contract is ambiguous, the court may look to relevant extrinsic evidence in order to ascertain the intent of the parties. *Automation by Design*, 463 F.3d at 753-54; *Klapp*, 663 N.W.2d at 453-54; *Ins. Adjustment Bureau*, 905 A.2d at 468-69.

Before beginning to analyze the contract itself, the Court must first consider the broad

influence of the American rule, which demands a narrow interpretation of the fee-shifting provision. *See Chicago Southshore*, 658 N.E.2d at 634; *Fleet Business Credit*, 735 N.W.2d at 647-48; *Profit Wise Mktg.*, 812 A.2d at 1275. Because such agreements are in derogation of over two hundred years of the common law, the Court cannot approve them wholesale, but must construe them narrowly and only award fees where expressly authorized. *See Bohlin v. Jungbauer*, 615 N.E.2d 438, 441 (Ind. Ct. App. 1993); *Rinaldi v. Rinaldi*, 333 N.W.2d 61, 66 (Mich. Ct. App. 1983).

Keeping in mind the American rule's narrow construction requirement, the Court first turns to the plain and ordinary meaning of the fee shifting provision. *See Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 772 (Ind. 2008) (denying recovery of attorney fees based on plain meaning of term "prevailing party"); *Profit Wise Mktg.*, 812 A.2d at 1275 (looking to the plain and ordinary meaning of term "prevail" in fee-shifting agreement and denying fee recovery). Section 9 expressly and unambiguously limits fee recovery to that incurred by the Lender in "enforcing" its rights. This necessarily raises the question—which is largely one of first impression in Indiana, Michigan, and Pennsylvania—of what constitutes enforcing. More specifically, is a lender enforcing its rights when defending against allegations that <u>it</u> breached a loan agreement?

Enforce is defined as: "1) to give force or effect to; to compel obedience to, and 2) loosely, to compel a person to pay damages for not complying with (a contract)." BLACK'S LAW DICTIONARY 549 (7th ed. 1999). Similarly, Webster's defines enforce as "to compel observance of or obedience to". WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 432 (1984). "Compel" is defined as "to cause or bring about by force or overwhelming pressure." BLACK'S

11

LAW DICTIONARY at 277.  In the legal context therefore, "enforce" involves more than mere participation in a dispute.  Rather, it plainly contemplates an offensive, coercive act—such as filing a lawsuit after a default—to compel observance or obedience.  Simply stated, "enforcing" presupposes that an act of disobedience (e.g., contractual non-compliance) has occurred. *Cf. In re Hashemi*, 104 F.3d 1122, 1126-27 (9th Cir. 1996) (denying fees because pursuing dischargeability determination in bankruptcy is not an action to enforce).

Contractual non-compliance by the Borrowers is not present here.  Rather, the Borrowers are the ones doing the "enforcing" by advancing both a declaratory judgment and breach of contract claim; that is, they seek to declare and enforce their rights under the notes and to compel the Lender to adhere to their interpretation of the agreements.  The Lender's position, on the other hand, has been purely defensive.[7]  In sum, the Borrowers expressed the possibility of pre-paying the notes based on their interpretation of the prepayment premium, the Lender resisted, and the Borrowers subsequently filed suit.  The plain meaning of "enforce" in the loan agreement therefore does not support the recovery of fees in this case, where the Lender has responded in defense of the Borrowers' attempts to compel obedience to their interpretation of the notes. *See Bohlin v. Jungbauer*, 615 N.E.2d 438, 441 (Ind. Ct. App. 1993) (finding that contract providing for fees in litigation arising from purchase agreement did not cover action for specific performance). C*f. People's Capital & Leasing Corp. v. Phillips*, No. 07-14566, 2008 WL 2610240, at *2 (E.D. Mich. June 30, 2008) (allowing fees where contract provides for fees incurred in "enforcing" rights and where <u>lender sued borrower</u>).

---

[7] On November 18, 2009, the Lender filed a counterclaim, asserting that it was entitled to recover its attorney fees.  Re-packaging its request for attorney fees under Section 9 as a "counterclaim" does not permit the Lender to circumvent the plain requirement of "enforcing."

The companion language of Section 9 does not lead to a contrary reading. For instance, the Lender extracts and highlights this provision from Section 9:

> Any reference in this Note to attorneys' fees shall mean reasonable fees, charges, costs and expenses of outside counsel and paralegals, whether or not a suit is proceeding is instituted, and whether incurred at the trial court level, on appeal, in a bankruptcy, administrative or probate proceeding, in consultation with counsel, or otherwise

and suggests it should be read apart from the enforcing requirement. The proper contextual reading of the sentence, however, is that it simply defines what constitutes attorney fees ("reasonable fees, charges, costs and expenses of outside counsel and paralegals"), and the forum where they may be awarded ("at the trial court level, on appeal, in a bankruptcy, administrative or probate proceeding, in consultation with counsel, or otherwise"). No where does this isolated language suggest that it was intended to strip away the requirement that the Lender must be enforcing its rights. *See Freiburger v. Bishop Dwenger High School*, 569 N.E.2d 755, 759 (Ind. Ct. App. 1991) ("The meaning of a contract is to be determined from a reading of the contract as a whole, not from individual words, phrases or paragraphs read alone."); *Old Kent Bank v. Sobczak*, 620 N.W.2d 663, 667 (Mich. Ct. App. 2000) (reading the contract as a whole and applying the plain language of the contract); *Flatley by Flatley v. Penman*, 632 A.2d 1342, 1344 (Pa. Super. Ct. 1993) ("Clauses in a contract should not be read as independent agreements thrown together without any consideration of their combined effect.").

Accordingly, the Court finds that the plain language of Section 9 limits the reimbursement of attorney fees to situations where the Lender enforces its rights against the Borrowers by taking some sort of coercive action. This interpretation is further bolstered when Section 9 is considered as part of a four corners review of the entire loan agreement. *See Evan v. Poe & Assoc., Inc.*, 873 N.E.2d 92, 98 (Ind. Ct. App. 2007); *Old Kent Bank*, 620 N.W.2d at 667;

*Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). Two additional provisions in the notes seemingly recognize the limitation imposed by the word "enforcing" and were drafted to address a larger range of disputes. Section 10, which immediately follows the fee reimbursement section, provides that:

> 10. WAIVER OF JURY TRIAL. Each party, after consulting (or having had the opportunity to consult) with counsel of their choice, knowingly and voluntarily, and for their mutual benefit, waives any right to trial by jury in the event of litigation regarding the performance or enforcement of, or in any way related to, this note or the indebtedness.

Similarly, Section 14 states in part:

> 14. MISCELLANEOUS. Lender and Borrower agree that any dispute which may arise between them with regard to this Note shall be resolved by litigation in federal or state court. . . .

The inclusion of the phrases "performance or enforcement of" and "or in any way related to" in Section 10 is particularly revealing. These phrases indicate that the parties—sophisticated business entities, represented by counsel, and negotiating over millions of dollars—recognized that "enforcing rights" does not include all disputes that may occur and specifically enlarged the scope of Sections 10 and 14 to address all possible contingencies. If the parties had intended the fee reimbursement provision to include "the performance of" or "any dispute" related to the notes, they clearly could have drafted Section 9 along the lines of Sections 10 and 14. *See Reuille,* 888 N.E.2d at 772 (discussing possible methods of drafting broad attorney fee provision); *cf. Fleet Business Credit*, 735 N.W.2d at 647-49 (allowing fees because reimbursement provision's scope included "any proceeding arising from or relating to this agreement."); *Montoya v. Villa Linda Mall, Ltd.*, 793 P.2d 258 (N.M. 1990) (holding that lease granting award of prevailing party's attorney fees in event of any action or proceeding "relating

14

to the provisions of this lease, or any default hereunder," allowed fees for tenants who prevailed in claims of negligent misrepresentation and constructive fraud).

Instead of broadly drafting Section 9 to encompass "the enforcement or performance of the notes" or "any dispute that may arise," the parties limited the fee reimbursement to those circumstances where the Lender enforces its rights against the Borrowers. The Court must therefore decline the Lender's invitation to rewrite Section 9 to have the same scope as Sections 10 and 14, *see Eskew v. Cornett*, 744 N.E.2d 954, 957 (Ind. Ct. App. 2001); *McDonald v. Farm Bureau Ins. Co.*, 747 N.W.2d 811, 817 (Mich. 2008); *Glasmere Fuel Serv., Inc. v. Clear*, 900 A.2d 398, 404 (Pa. Super. Ct. 2006), and deny the Lender's request for attorney fees.

To summarize, the American rule's long-standing presumption that parties bear their own costs of litigation demands that fee shifting agreements be narrowly construed. *See Chicago Southshore*, 658 N.E.2d at 634; *Fleet Business Credit*, 735 N.W.2d at 647-48; *Profit Wise Mktg.*, 812 A.2d at 1275. With that principle in mind, the plain language definition of "enforce" limits the Lender's recovery of attorney fees to instances where it takes affirmative, coercive action against the Borrowers. Here, however, it is the Borrowers who have taken coercive action against the Lender by pursuing a declaratory judgment and a breach of contract claim. Accordingly, and as a matter of law, the loan agreements prohibit the Lender from recovering its attorney fees.

## IV. THE MOTIONS TO STRIKE

The Borrowers have moved to strike the Declaration of David Swanson (Docket # 109, pg. 14-16), the Lender's lead counsel, arguing that it contains no admissible evidence and is not necessary for the disposition of the pending summary judgment motions. (Docket # 118.) By the

15

Lender's own admission, the Declaration only addresses its contingent request for a Rule 56(f) continuance to do additional discovery should the Court find that the Reimbursement provision is ambiguous and deny summary judgment, such that the issue must proceed to trial. (Decl. ¶¶ 8, 9; Def.'s Br. in Opp'n to Pls.' Mot. to Strike 1.) Since, however, the Reimbursement provision is unambiguous and because summary judgement on that issue will be granted in favor of the Borrowers, the motion is moot.

Similarly, the Lender has moved to strike the Borrowers' three supporting affidavits (Docket # 24, 34, 107-2), broadly attacking fourteen different paragraphs and summarily claiming that the provisions are irrelevant, hearsay, and in violation of the parol evidence and best-evidence rules. The challenged paragraphs, which largely provide background information on the substance and formation of the notes, are unnecessary for the question of whether, as a matter of law, the contract allows for attorney fees. Having answered the question without resort to the affidavits, the Lender's motion to strike is also moot.

## V. CONCLUSION

The Plaintiffs' motion for partial summary judgment (Docket # 106) is GRANTED and the Defendant's motion (Docket # 108) is DENIED, along with its motion for oral argument (Docket # 110). Both parties' motions to strike (Docket # 111, 118) are moot.

SO ORDERED.

Enter for March 23, 2010

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge