## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | |
|---|---|
| BKCAP, LLC, GRAYCAP, LLC, and SWCAP, LLC, | )<br>)<br>) |
| Plaintiffs / Counterclaim Defendants, | )<br>) |
| v. | )    CAUSE NO. 3:07-cv-637 |
| CAPTEC FRANCHISE TRUST 2000-1, | )<br>)<br>) |
| Defendant / Counterclaim Plaintiff. | ) |

## OPINION AND ORDER

On July 21, 2011, following a two-day bench trial, this Court entered an Opinion and Order (the "Order") in this breach of contract action, directing the Clerk to enter a judgment in the amount of $1,246,555.25, exclusive of prejudgment interest, in favor of Plaintiffs BKCAP, LLC, GRAYCAP, LLC, and SWCAP, LLC (collectively, the "Borrowers") and against Defendant Captec Franchise Trust 2000-1 (the "Trust"). (Docket # 212, 213.) The Court further opined that from September 1, 2009, the Borrowers are entitled to prejudgment interest on the judgment. (Order 28-30.)

The Borrowers ask under Federal Rules of Civil Procedure 52(b) and 59(e) that the Court amend its findings and judgment to include an award of prejudgment interest from an earlier period—October 2007—with overall interest calculated in the amount of $169,775.81. (Docket # 214.) The Trust opposes the motion, asserting that prejudgment interest is not recoverable under Indiana law and that an award of prejudgment interest prior to September 1, 2009, would result

in "double recovery" for the Borrowers.[1] (Docket # 222.)

After reviewing the parties' respective briefs on that matter (Docket # 215, 222, 228), the Court concludes that the Borrowers' arguments are warranted and, consequently, their motion to amend will be GRANTED.

## I. BACKGROUND

The Order directing the $1,246,555.25 judgment in the Borrowers' favor followed a two-day bench trial held on May 3-4, 2011, centering on what the Borrowers and the original lenders (who later assigned the notes to the Trust) really intended when they included an ambiguous pre-payment premium in 34 separate promissory notes as part of a $49 million mortgage financing deal. (Docket # 201, 202.) The trial, and the resulting Order, arose from a ruling by the Seventh Circuit Court of Appeals after summary judgment was granted in the Trust's favor on the declaratory judgment and breach of contract claims brought by the Borrowers. *BKCAP, LLC v. Captec Franchise Trust 2000-1*, No. 3:07-cv-637, 2008 WL 3833939 (N.D. Ind., Aug. 12, 2008), *rev'd*, 572 F.3d 353 (7th Cir. 2009).

At trial, the Borrowers argued that the original contracting parties modified a standard form note to accommodate a bargained-for privilege; that is, the Borrowers were granted the right to pre-pay a note without penalty after ten years and to pre-pay with a non-punitive pre-payment premium if the pay-off was within the first ten years. (Order 2.) The Trust, on the other hand, argued at trial that all the documentation surrounding the transaction shows that the original parties intended a "make-whole" or "yield maintenance" pre-payment premium so that

---

[1] Also before the Court is Defendant's Motion for Judgment as a Matter of Law Under Rule 52(c) or, Alternatively, for New Trial Under Rule 59(a). (Docket # 224.) That motion is addressed in a separate Opinion and Order.

any holder (including, of course, the Trust's investors) would receive all of the expected principal and interest on their investment through at least the first ten years. (Order 2-3.)

Following the trial, counsel submitted post-trial briefs and responses, together with proposed findings of fact and conclusions of law. (Docket # 203-06, 210-11.) After examining the entire record, considering the arguments of counsel, and determining the credibility of the witnesses, the Court on July 21, 2011, made findings of fact and conclusions of law and rendered the $1,246,555.25 judgment, exclusive of prejudgment interest, in favor of the Borrowers. (Docket # 212.) The Court further opined that because the amount of their damages was "fixed and easily ascertainable as of September 1, 2009," the Borrowers were also entitled to prejudgment interest. (Order 28.) The Court then afforded the parties an opportunity to address the exact amount of prejudgment interest due and owing through a separate motion to be filed under Rules 52(b) and 59(e). (Order 28.) The Borrowers filed the instant motion on August 1, 2011, seeking $169,775.81 in prejudgment interest. (Docket # 214.)

## II. STANDARD OF LAW

Within twenty-eight days of the entry of a judgment in a bench trial, a party may bring a motion asking the court to amend its findings or make additional findings. FED. R. CIV. P. 52(b). Within that same period of time, a party also may move to alter or amend a judgment. FED. R. CIV. P. 59(e).

"A Rule 59(e) motion 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence.'" *United States v. Real Prop. at 7401-7403 S. Racine Ave., Chicago, Ill*., No. 04 C 5885, 2010 WL 2076917, at *2 (N.D. Ill. May 20, 2010) (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)); *see Jamerson v.*

*Milwaukee Cty., Procurement Div.*, No. 04-C-749, 2006 WL 1785768, at *1 (E.D. Wis. June 26, 2006); *Diebitz v. Arreola*, 834 F. Supp. 298, 302 (E.D. Wis. 1993). "It is within the district court's discretion to grant a Rule 59(e) motion." *Real Property*, 2010 WL 2076917, at *2 (citing *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)); *Diebitz*, 834 F. Supp. at 302-03. "District courts have required a similar showing on a motion to amend a district court's findings of fact or conclusions of law under Rule 52(b)." *Real Property,* 2010 WL 2076917, at *2; *see MacSteel Int'l USA Corp. v. Superior Prods. Co.*, No. 98 C 7182, 2002 WL 1067248, at *1 (N.D. Ill. May 28, 2002) ("Rule 52(b) motions are intended to correct manifest errors of law or fact or to present newly discovered evidence."); *Diebitz*, 834 F. Supp. at 302.

### III.  DISCUSSION

A.  <u>Applicable Law on Prejudgment Interest</u>

"Prejudgment interest is an element of damages—it is used to make the victim whole." *Matter of Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1333 (7th Cir. 1992). "Prejudgment interest compensates the prevailing party for the loss of use of money during the time between the wrong and the conclusion of the litigation." *Ziaee v. Vest*, 916 F.2d 1204, 1208 (7th Cir. 1990). That is, "[m]oney has a time value, and prejudgment interest is therefore necessary in the ordinary case to compensate a plaintiff fully for a loss suffered at time t and not compensated until t + 1, 2, 3 . . . n." *Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 274 (7th Cir. 1993).

"Since state law defines the element of damages in diversity cases, state law dictates the propriety of, and rules for calculating, prejudgment interest." *DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc.*, No. 3:99-CV-0569RM, 2002 WL 33831760,

at *2 (N.D. Ind. 2002) (citing *Amoco Cadiz*, 954 F.2d at 1333). Therefore, the parties agree that the laws of Indiana, Michigan, and Pennsylvania—the state law governing the twelve promissory notes at issue in this action—control the award of prejudgment interest.

As to the Michigan notes, prejudgment interest is calculated "on the entire amount of the money judgment" at a rate certified by Michigan's treasurer at six-month intervals on the entire judgment from the date of the filing of the complaint. MICH. COMP. LAWS § 600.6013(8); *see Wrench LLC v. Taco Bell Corp.*, 290 F. Supp. 2d 823, 823 (W.D. Mich. 2003) ("The prejudgment interest statute is remedial in nature and is to be construed liberally in favor of the prevailing party." (citation omitted)). Under Pennsylvania law, where a plaintiff prevails in a contract action pertaining to "a definite sum," prejudgment interest is awarded at a six-percent rate from the date the amount due under the contract was initially withheld. 41 PA. STAT. § 202; *Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 169-70 (3rd Cir. 2010) (applying Pennsylvania law). And with respect to Indiana, prejudgment interest is awarded at an eight-percent rate where the damages are "readily ascertainable" as of a particular time. IND. CODE §§ 24-4.6-1-102, 103; *Fackler v. Powell*, 923 N.E.2d 973, 979 (Ind. Ct. App. 2010); *Bank One, Nat'l Assoc. v. Surber*, 899 N.E.2d 693, 706 (Ind. Ct. App. 2009); *Thor Elec. Inc. v. Oberle & Assocs., Inc.*, 741 N.E.2d 373, 377 (Ind. Ct. App. 2000).

B. <u>The Trust's challenges to the Borrowers' request for prejudgment interest are without merit</u>.

Here, the Trust challenges the Borrowers' request for prejudgment interest only in part. Specifically, the Trust opposes (1) any award of prejudgment interest on the Indiana notes; and (2) prejudgment interest on all the notes for the period of October 2007 to September 1, 2009.

5

Therefore, the Trust does not dispute the underlying calculations used by the Borrowers or the award of prejudgment interest as of September 1, 2009, on the Michigan and Pennsylvania notes.

*1. The Borrowers are entitled to prejudgment interest under Indiana law.*

The Trust first argues that, under Indiana law, damages that are the subject of a "good faith dispute" cannot provide the basis for an award of prejudgment interest, emphasizing that "[t]here is no question that [it] acted in good faith throughout this dispute." (Def.'s Resp. 1-2 (citing *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758 (7th Cir. 2010)).) In advancing this argument, the Trust seriously contorts the applicable legal standard for awarding prejudgment interest.

"Under Indiana law, prejudgment interest is warranted if the damages are 'ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time the damages accrued.'" *Wickens*, 620 F.3d at 757-58 (quoting *Cincinnati Ins. Co. v. BACT Holdings, Inc.*, 723 N.E.2d 436, 441 (Ind. Ct. App. 2000)). "[P]rejudgment interest may be awarded where the amount of damages can be ascertained by simple mathematical computation and has been allowed even where some degree of judgment must be used to measure damages." *Hayes v. Chapman*, 894 N.E.2d 1047, 1054 (Ind. Ct. App. 2008); *see Whited v. Whited*, 859 N.E.2d 657, 665 (Ind. 2007) ("[P]rejudgment interest should be awarded only where damages are readily ascertainable and can be calculated by simple mathematical computation."). In fact, "[o]nce it appears that the damages may be ascertained with reasonable precision, an award of prejudgment interest is mandatory." *Hayes*, 894 N.E.2d at 1054-55.

Thus, the Trust's suggestion that prejudgment interest is not awardable where the litigants disagree in good faith about *liability* for damages does not accurately reflect the law in

Indiana. The "ascertainable" standard refers to the *amount* of damages, not the liability for those damages. *City of Indianapolis v. Twin Lakes Enters., Inc*., 568 N.E.2d 1073, 1087 (Ind. Ct. App. 1991) ("The trier of fact need always exercise its judgment to determine the liability for damages; but, prejudgment interest is proper where the trier of fact need not exercise its judgment to assess the amount of damages."). Here, there was no material dispute between the parties about the amount of the Borrowers' damages, as the Trust's defense throughout this litigation centered on denying any *liability* for damages. Once liability was established, prejudgment interest was appropriately awarded under Indiana law because the damages were "readily ascertainable and . . . calculated by simple mathematical computation"—a point that the Trust does not dispute. *Whited*, 859 N.E.2d at 665.

    *2. The Borrowers are entitled to prejudgment interest from October 2007.*

  In the Order, the Court observed that "[b]ecause the amount of their damages is fixed and easily ascertainable as of September 1, 2009, the Borrowers are also entitled to pre-judgment interest." (Order 28.) The Borrowers now emphasize, however, that their "fixed and easily ascertainable" damages actually began to accumulate in October 2007—when they made their first monthly payment of principal and "excess interest" on the notes that they would have prepaid on September 1, 2007, but for the Trust's breach of contract. (Pls.' Br. 4.)

  Indeed, in Exhibits A and B to the Post-trial Affidavit of John C. Firth, the Borrowers demonstrate that the "same simple arithmetic" calculation is used in computing prejudgment interest for the two-year periods before and after September 1, 2009. Moreover, the Trust does not contest the Borrowers' assertion that the damages were fixed and easily ascertainable as of October 2007.

Rather, the Trust argues that any award of prejudgment interest prior to September 1, 2009, would result in "double recovery" or "double interest" to the Borrowers. (Def.'s Resp. 3, 4.) It reiterates, and correctly so, that the purpose of prejudgment interest is to compensate a prevailing party for the time value of any money judgment recovered. (Def.'s Resp. 3.) The Trust, however, further conclusorily suggests that since the Court's damages award constitutes the "excess interest" paid by the Borrowers, "the damages the Court awarded Borrowers represent the time value of Borrowers' money." (Def.'s Resp. 3-4.)

The Court fails to see, and the Trust never really explains, however, how the damages award of "excess interest" (money they could have avoided paying if allowed to go without penalty to another lender) paid by the Borrowers from October 1, 2007, to September 1, 2009, includes anything for the time value of money. Nor does the Trust cite to any portion of the record to support its assertion. Rather, it is clear that without an award of prejudgment interest, the Borrowers will not be "made whole," as they would only be compensated in today's dollars for the "excess interest" paid—and thus lost to them—several years earlier. *See Amoco Cadiz*, 954 F.2d at 1333; *Ziaee*, 916 F.2d at 1208; *Partington*, 999 F.2d at 274 ("[P]rejudgment interest is . . . necessary in the ordinary case to compensate a plaintiff fully for a loss suffered at time t and not compensated until t + 1, 2, 3 . . . n."). Therefore, the Borrowers are entitled to prejudgment interest as of October 1, 2007 (the date of the first "excess interest" payment), on the Pennsylvania and Indiana notes, and as of October 15, 2007 (the date the complaint was filed), on the Michigan notes.[2]

---

[2] Also before the Court is Defendant's Motion for Stay of Execution of Judgment Pending Disposition of Post-Judgment Motion (Docket # 219), requesting pursuant to Federal Rule of Civil Procedure 62(b) that the Court stay execution of the judgment through the fourteenth day after the disposition of Plaintiffs' Motion to Amend Findings and Judgment. The Trust explains that it intends to post a *supersedeas* bond in connection with its filing of

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Amend Findings and Judgment (Docket # 214) is GRANTED.  The Clerk is DIRECTED to amend its judgment (Docket # 213) in favor of GRAYCAP, LLC, and against Captec Franchise Trust 2000-1 to include $11,423.39 in prejudgment interest, resulting in an amended judgment as of July 22, 2011, of $74,843.43; judgment in favor of SWCAP, LLC, and against Captec-Franchise Trust 2000-1 to include $69,416.18 in prejudgment interest, resulting in an amended judgment as of July 22, 2011, of $636,393.07; and judgment in favor of BKCAP, LLC, and against Captec-Franchise Trust 2000-1 to include $88,936.24 in prejudgment interest, resulting in an amended judgment as of July 22, 2011, of $705,094.56.

In addition, Defendant's Motion for Stay of Execution of Judgment Pending Disposition of Post Judgment-Motion (Docket # 219) is GRANTED.  The Court STAYS execution of the judgment through October 28, 2011.

SO ORDERED.

Entered on the 14th day of October, 2011.

                                              S/Roger B. Cosbey
                                              Roger B. Cosbey
                                              United States Magistrate Judge

---

the notice of appeal (Docket # 226), but that it needs to know the full and final amount of the judgment before doing so.  It states that the fourteen-day period will allow it to finalize its *supersedeas* arrangements and obtain the bond in the proper amount; it will then present the bond to the Court for approval under Rule 62(d).
      The Borrowers oppose the Trust's motion for stay, asserting that "there is no concurrent commitment to provide security for the Borrowers' protection during the requested [fourteen-day] stay." (Def.'s Resp. 2.)  The Borrowers, however, fail to suggest *how* the requested stay would hinder their collection efforts, particularly since they have kept three notes in force and continued to pay monthly payments at a higher rate of interest "purely as a collection hedge." (Order 16.)  Consequently, the Trust's motion for stay will be GRANTED.