# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| BKCAP, LLC, GRAYCAP, LLC, and SWCAP, LLC, | ) ) ) |
| Plaintiffs / Counterclaim Defendants, | ) ) |
| v. | ) CAUSE NO. 3:07-cv-637 ) |
| CAPTEC FRANCHISE TRUST 2000-1, | ) ) |
| Defendant / Counterclaim Plaintiff. | ) |

## OPINION AND ORDER

On July 21, 2011, following a two-day bench trial, this Court entered an Opinion and Order (the "Trial Order") in this breach of contract action, directing the Clerk to enter a judgment in the amount of $1,246,555.25, exclusive of prejudgment interest, in favor of Plaintiffs BKCAP, LLC, GRAYCAP, LLC, and SWCAP, LLC (collectively, the "Borrowers") and against Defendant Captec Franchise Trust 2000-1 (the "Trust"). (Docket # 212, 213.) The Trust now moves the Court to vacate the judgment and render a "take-nothing" judgment against the Borrowers pursuant to Federal Rule of Civil Procedure 52(c), or, alternatively, to order a new trial under Federal Rule of Civil Procedure 59(a).[1] (Docket # 224.)

Because the Trust's various challenges to the Trial Order, for the most part, merely rehash prior unsuccessful arguments and ultimately do not warrant the relief requested, the Trust's motion will be DENIED.

---

[1] The Borrowers filed a timely response to the motion (Docket # 234), but the Trust failed to file a reply and the time to do so has since passed.

Also before the Court is Plaintiffs' Motion to Amend Findings and Judgment (Docket # 214) and Defendant's Motion for Stay of Execution of Judgment Pending Disposition of Post-Judgment Motion (Docket # 219), which the Court is addressing in a separate Opinion and Order.

# I. BACKGROUND

The Trial Order directing the $1,246,555.25 judgment in the Borrowers' favor followed a two-day bench trial held on May 3-4, 2011, centering on what the Borrowers and the original lenders (who later assigned the notes to the Trust) really intended when they included an ambiguous pre-payment premium in 34 separate promissory notes as part of a $49 million mortgage financing deal. (Docket # 201, 202.) The trial, and the resulting Trial Order, arose from a ruling by the Seventh Circuit Court of Appeals after summary judgment was granted in the Trust's favor on the declaratory judgment and breach of contract claims brought by the Borrowers. *BKCAP, LLC v. Captec Franchise Trust* 2000-1, No. 3:07-cv-637, 2008 WL 3833939 (N.D. Ind., Aug. 12, 2008), *rev'd,* 572 F.3d 353 (7th Cir. 2009). In short, the Seventh Circuit reversed the District Court's conclusion that the pre-payment premium language was unambiguous and should be read as supporting the Trust's interpretation. *Id*. at *6.

The Seventh Circuit essentially determined that while the contract language defining the pre-payment premium was clear, it was nonetheless ambiguous because it made no economic sense; that is, the formula (if literally followed) would never impose a penalty in the event of pre-payment. *Id.* Since such an absurdity—a pre-payment penalty that never exacts a penalty—could not have been the intent of rational business entities, the case was remanded for trial on what was intended by this particular provision.[2] *Id*.

At trial, the Borrowers argued that the original contracting parties modified a standard form note to accommodate a bargained-for privilege; that is, the Borrowers were granted the

---

[2] Following remand, the case was reassigned to the undersigned Magistrate Judge in accordance with Seventh Circuit Rule 36. (Docket # 83.) The Magistrate Judge has jurisdiction under 28 U.S.C. § 636(c), and the Court has jurisdiction under 28 U.S.C. § 1332. (Docket # 18, 83, 91.)

right to pre-pay a note without penalty after ten years and to pre-pay with a non-punitive pre-payment premium if the pay-off was within the first ten years. (Trial Order 2.) The Borrowers maintained that their interpretation of the pre-payment formula was supported by: (1) a confirmatory discussion at the July 1999 loan closing; and (2) the fact that except for the Trust's 12 notes, the holders of all the other 21 notes accepted payment in 2007 (within the first ten years) using the Borrowers' methodology for the pre-payment premium. (Trial Order 2.)

The Trust, on the other hand, argued at trial that all the documentation surrounding the transaction shows that the original parties intended a "make-whole" or "yield maintenance" pre-payment premium so that any holder (including, of course, the Trust's investors) would receive all of the expected principal and interest on their investment through at least the first ten years. (Trial Order 2-3.) The Trust claimed that the Borrowers' arithmetic calculation (which the Borrowers asserted was approved at the closing and honored by the other holders) was about $800,000 shy of making the investors whole and did not maintain the expected yield and that instead, a balloon payment, which does not expressly appear in the loan contracts, had to be incorporated into the equation. (Trial Order 3.)

Following the trial and preparation of a transcript,[3] counsel submitted post-trial briefs and responses, together with proposed findings of fact and conclusions of law. (Docket # 203-06, 210-11.) After examining the entire record, considering the arguments of counsel, and determining the credibility of the witnesses, the Court on July 21, 2011, made findings of fact and conclusions of law and rendered the $1,246,555.25 judgment, exclusive of prejudgment interest, in favor of the Borrowers. (Docket # 212.)

---

[3] Reference to the transcript is made as "(Tr. __)".

The Trust then timely filed the instant motion on August 19, 2011, requesting that the Court vacate its earlier judgment and render a take-nothing judgment against the Borrowers, or alternatively, to order a new trial. (Docket # 224.) In the motion, the Trust advances numerous challenges to the Trial Order, most of which the Court has already considered and rejected in prior rulings. Nevertheless, after reviewing the applicable standard of law, the Court will discuss each of the Trust's arguments in turn.

## II. STANDARD OF LAW

A. Legal standard for judgment as a matter of law under Rule 52(c).

Federal Rule of Civil Procedure 52(c) authorizes a court to enter judgment as a matter of law against a party after the "party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue," provided the court's judgment is "supported by findings of fact and conclusions of law." *See Fillmore v. Page*, 358 F.3d 496, 502 (7th Cir. 2003) (explaining that Rule 52(c) "applies to bench trials and authorizes the judge, after hearing all of the evidence with respect to an issue, to make findings of fact and enter judgment as a matter of law against that party"); *Neopost Industrie B.V. v. PFE Int'l, Inc.*, 403 F. Supp. 2d 669, 675 (N.D. Ill. 2005) ("Rule 52(c) 'allows the district court to weigh the evidence to determine whether the plaintiff has proven his case.'" (quoting *Ortloff v. United States*, 335 F.3d 652, 660 (7th Cir. 2003))); *see also Sutter Ins. Co. v. Applied Sys., Inc.*, 393 F.3d 722, 727 (7th Cir. 2004) (explaining that a judge's decision should trace a clear path from the evidence to the judgment).

In ruling on a Rule 52(c) motion, "[t]he court is not required to make any special inferences or review the facts in the light most favorable to the plaintiff." *Robinson v. Sinclair & Valentine, L.P.*, No. 90 C 4005, 1993 WL 498326, at *1 (N.D. Ill. Dec. 1, 1993). Rather, the

4

district court is "bound to take an unbiased view of all the evidence, direct and circumstantial, and accord it such weight as the court believes it entitled to receive." *Id.* (quoting *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 487 (7th Cir. 1980)); *see Int'l Union of Operating Eng'rs, Local Union 103 v. Ind. Constr. Corp.*, 13 F.3d 253, 257 (7th Cir. 1994) ("[I]n making this determination [under Rule 52(c)], the court is within its prerogative to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." (internal quotation marks and citation omitted)).

      B.  <u>Legal Standard for New Trial Under Rule 59(a)</u>.

Federal Rule of Civil Procedure 59(a) allows a court to order a new trial after a bench trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." FED. R. CIV. P. 59(a)(1)(B); *see, e.g., Hunter v. Dutton*, No. 06-cv-444, 2011 WL 3611327, at *1 (S.D. Ill. Aug. 16, 2011). In deciding a motion for a new trial under Rule 59, the "district court must determine whether the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Krippelz v. Ford Motor Co.*, 750 F. Supp. 2d 938, 942 (N.D. Ill. 2010) (quoting *Westchester Fire Ins. Co. v. Gen. Star Indem. Co.*, 183 F.3d 578, 582 (7th Cir. 1999)); *see Kapelanski v. Johnson*, 290 F.3d 525, 530 (7th Cir. 2004); *Powers v. Fredrickson*, No. 03-CV-670, 2008 WL 5262772, at *1 (S.D. Ill. Dec. 17, 2008). "[T]he court may, on a motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." FED. R. CIV. P. 59(a)(2); *see Hunter*, 2011 WL 3611327, at *1.

## III. DISCUSSION

A. <u>The Court's interpretation of the ambiguous pre-payment premium provision is not "unreasonable as a matter of law of the case</u>."

The Trust first argues that the Court's adoption of the Borrowers' contractual interpretation of the ambiguous pre-payment penalty provision is "unreasonable as a matter of law of the case." (Def.'s Br. 3.) Not surprisingly, it further contends that "[t]he only reasonable interpretation offered at trial was that of the Trust." (Def.'s Br. 2.)

In that vein, the Trust argues that the Seventh Circuit found the Borrowers' interpretation of the pre-payment premium unreasonable when it reversed summary judgment, *BKCAP, LLC v. Captec Franchise Trust 2000-1*, 572 F.3d 353, 362 (7th Cir. 2009) ("*BKCAP II*"), and that this conclusion constitutes the law of the case. More precisely, however, the Seventh Circuit concluded that the contract language defining the pre-payment premium was ambiguous, and thus its meaning was a "question of fact" requiring "an examination of relevant extrinsic evidence" focused largely on the intent of the parties at the time of contracting. *Id.*

Therefore, because of the ambiguity, the Seventh Circuit opined that the meaning of the pre-payment penalty premium language could not, as the Trust suggests, be determined "as a matter of law." *Id.* (concluding that because the contract language defining the pre-payment premium is ambiguous, "resolving the meaning of the contract on summary judgment was inappropriate"); *see generally Shorter v. Shorter*, 851 N.E.2d 378, 383 (Ind. Ct. App. 2006) ("Where an instrument is ambiguous, we will consider all relevant evidence, including extrinsic evidence, to discern the meaning of the instrument's provisions. Ultimately, our goal is to determine the parties' intent in crafting those provisions, and to effectuate that intent." (citation

6

omitted)). This Court on remand followed the Seventh Circuit's directive to conduct a trial, examine the extrinsic evidence, and determine the intent of the original contracting parties concerning the ambiguous term, and nothing in the Seventh Circuit's decision barred this Court from assigning the meaning it did to the ambiguous term *based on the evidence at trial*. (*See* Op. and Order dated Aug. 12, 2010 ("Summ. J. Order") 11 ("While the Court of Appeals rejected the Borrowers' facial interpretation of the contract, it left open the possibility that upon remand extrinsic evidence could prove the Borrowers' assertions correct.").)

In short, the Trust's argument simply amounts to a rehash of its previous argument that the meaning of the pre-payment penalty provision could be determined as a matter of law—which the Seventh Circuit and this Court have already rejected. *See, e.g.*, *Bosch v. Ball-Kell*, No. 03-1408, 2007 WL 2572383, at 3-4 (C.D. Ill. Aug. 20, 2007) (rejecting motion for judgment as a matter of law and a new trial where plaintiff "offer[ed] little more than an attempt to rehash arguments on which she was previously unsuccessful").

B. <u>The Court did not reform the contract</u>.

Next, the Trust argues that the Court "has rewritten the parties' agreement" and that reformation is not an available remedy in this case. (Def.'s Br. 3.) Specifically, the Trust contends that the Court ignored language requiring a yield maintenance amount be paid during the first ten years; deleted the requirement that "the outstanding principal balance of this Note as of the date of the pre-payment" be subtracted, and added a provision that full or partial pre-payments "may be made at any time at the option of Borrower." (Def.'s Br. 3-4.)

The Court, however, did not "rewrite" the contract or grant the remedy of reformation. "Reformation is an extreme equitable remedy to relieve the parties of mutual mistake or of

fraud." *Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 772 (Ind. Ct. App. 2003) (internal quotation marks and citation omitted); *Olsen v. Porter*, 539 N.W.2d 523, 525 (Mich. Ct. App. 1995); *Regions Mortg., Inc. v. Muthler*, 889 A.2d 39, 41 (Pa. 2005). Here, neither party alleged mistake or fraud or asserted a claim of reformation. Nor were the Borrowers required to prove mistake or fraud as an element of their breach of contract claim.

Rather, prior to determining whether the Trust breached the contract, the Court discerned—pursuant to the Seventh Circuit's directive—the original contracting parties' intended meaning of the pre-payment provision. This was a matter of contract construction based on the extrinsic evidence, *not* reformation. *See Fowler v. Campbell*, 612 N.E.2d 596, 603 (Ind. App. Ct. 1993) (concluding that where the court "construed and interpreted the [c]ontract as it was written, . . . there was no reformation"); *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 29 n.28 (Mich. 1994) ("The primary goal in the construction or interpretation of any contract is to honor the intent of the parties."); *Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.*, 959 A.2d 438, 449 (Pa. Super. 2008) ("[T]he process of a court defining the scope of a contract is actually construction and not reformation."). Therefore, the Trust's second argument—that the Court improperly granted the remedy of reformation—misses the mark.

    C. <u>Firth's testimony about the events at the loan closing was admissible</u>.

At trial, John Firth, the Borrowers' then general counsel and executive vice president, testified about the intent of the parties at the time of contracting by referring to a discussion he had with Robert Schrader, the original lender's most senior operating officer and point person for the transaction. (Tr. 51.) In particular, Firth testified that at the loan closing, Schrader explained the working of the pre-payment provision in a manner that was consistent with the

8

Borrowers' calculation methodology as advanced at trial and which was subsequently adopted by the Court. (Tr. 55.) Almost immediately, Firth used the methodology to calculate the pre-payment premium on the back of an envelope and showed it to Schrader, who confirmed its accuracy. (Tr. 7-11, 45, 52-60.) The Trust now argues that Firth's testimony of that conversation was inadmissible because it violates the "best evidence" rule, FED. R. EVID. 1002, and constitutes inadmissible hearsay.

*1. The Trust has waived the "best evidence" rule objection.*

To begin, the Trust has waived the "best evidence" rule argument since it did not make this objection at trial. FED. R. EVID. 103(a)(1); (s*ee* Tr. 51-57). The only objection that the Trust tendered at trial concerning Firth's testimony about the loan closing was that it constituted "inadmissible hearsay" (Tr. 51, 54), which is insufficient to preserve the matter. *See, e.g.*, *United States v. Shriver*, 842 F.2d 968, 976 n.10 (7th Cir. 1988) (stating that where defendant raised only a "lack of foundation" objection at trial, he waived the "best evidence" issue).

In any event, Firth's testimony was based on his first-hand knowledge of the conversation at the loan closing, rather than his knowledge of the document—that is, the so-called "back of the envelope" where he had written the calculation. Consequently, the "best evidence" rule does not apply. *See Waterloo Furniture Components, Ltd. v. Haworth, Inc*., 467 F.3d 641, 648-49 (7th Cir. 2006) ("If a witness's testimony is based on his first-hand knowledge of an event as opposed to his knowledge of the document, . . . then [the "best evidence" rule] does not apply."). Moreover, the Trust does not dispute the Borrowers' representation that the "envelope" was discarded more than a decade ago, and there is no showing that it was discarded in "bad faith." Under Federal Rule of Evidence 1004(1), other evidence of the contents of a

9

writing is admissible if the original writing was lost or destroyed, provided that it was not lost or destroyed in bad faith.

### 2. *Firth's testimony does not constitute inadmissible hearsay.*

Firth's testimony about Schrader's statements at the loan closing do not constitute inadmissible hearsay for at least three reasons.

First, as this Court held at trial (Tr. 54), Firth's testimony concerned the original contracting parties' *intent*—rather than a "factual matter"—about how the pre-payment premium provision would be applied. *See Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 694-95 (7th Cir. 2011). That is, Firth's testimony goes to what both Schrader and Firth intended the ambiguous pre-payment penalty language to mean (essentially the point of the Seventh Circuit's remand, *BKCAP II*, 572 F.3d at 362) and not what it meant in truth or in fact.

In *Catalan*, 629 F.3d at 694-95, in which borrowers sued an assignee of the original lender for breach of contract, the Seventh Circuit rejected a similar hearsay argument:

> Hearsay, of course, is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The loan officer's statement to Morris was not hearsay. It was not an assertion of a factual matter but a statement describing the bank's collective intentions: we won't approve a loan until you get the foreclosure issue resolved. There is also an exception to the exclusion of hearsay for "statement of the declarant's then existing state of mind . . . (such as intent, plan, motive, design . . . )." Fed. R. Evid. 803(3). Also, because the loan officer was speaking during the employment relationship concerning matters within the scope of her employment, her statement may be imputed to the bank. Thus, the LaSalle loan officer's statements to plaintiff Morris about the need to resolve the mortgage problems were expressions of the intentions of the bank made by its representative. The statements fall outside the definition of hearsay, and even if they amounted to hearsay, the Rule 803(3) hearsay exception would apply. The testimony from Morris about the bank representative's statement is admissible.

(internal case citations omitted). Therefore, as in *Catalan*, Firth's testimony about Schrader's

10

statements is not hearsay, and even if it was, it would fall within the hearsay exception for expressions of "the declarant's then existing state of mind . . . such as intent . . . ." FED. R. EVID. 803(3).

Moreover, Firth's testimony about Schrader's statements is in the nature of "verbal acts," which are not hearsay. "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." FED. R. EVID. 801 cmt. c (citing *Emich Motors Corp. v. Gen. Motors Corp.*, 181 F.2d 70 (7th Cir. 1950), *rev'd on other grounds by*, 340 U.S. 558). "The effect is to exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on the conduct affecting their rights." FED. R. EVID. 801 cmt. c.

In that vein, "[t]he statements of a declarant of his intention to enter into a contract and to its terms have been held to be more in the nature of verbal acts and, therefore, *not* inadmissable hearsay." *Hindin/Owen/Engelke, Inc. v. GRM Indus., Inc.*, 869 F. Supp. 539, 544 (N.D. Ill. 1994) (emphasis added); *accord Cheng v. Wang*, No. 96 C 0681, 1998 WL 27140, at *3 (N.D. Ill. Jan. 16, 2008) (acknowledging that conversations between the contracting parties would be admissible as evidence of "what plaintiffs believed to be the terms of the contract"); *see also Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 567 n.50 (D. Md. 2007) ("Verbal acts, also known as statements of legal consequence, are not hearsay, because the statement is admitted merely to show that it was actually made, not to prove the truth of what was asserted in it. For example, the hearsay rule does not exclude relevant evidence as to what the contracting parties said or wrote with respect to the making or the terms of an agreement.").

And even if Firth's testimony about Schrader's statements *was* offered for the truth of the matter, a second hearsay exception would apply—Rule 804(b)(3), a statement against interest. A "statement against interest" is a statement that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's . . . pecuniary interest . . . ." FED. R. EVID. 804(b)(3)(A). To qualify for this exception, a declarant must be "unavailable," which includes having testified to "a lack of memory of the subject matter of the declarant's statement . . . ." FED. R. EVID. 804(a)(3). Here, Schrader represented at his deposition that his memory is largely empty concerning the loan closing. (Tr. 329, 332; Schrader Dep. 13-15, 20, 60-61.) And, considering that this was a $49 million loan deal and the pre-payment penalty provision dispute has spawned four years of litigation and more than $1 million in damages, it is reasonable to conclude that Schrader had a significant pecuniary interest at stake at the time of contracting, and thus would not have agreed to Firth's calculation—confirming his own prior statement against pecuniary interest—unless he believed it to be true and accurate.

Consequently, for the foregoing reasons, the Trust's argument that Firth's testimony concerning the events at the loan closing was inadmissible is unpersuasive.

D. <u>The Trust breached the contracts when it rejected the Borrowers' pre-payment attempts and insisted on a pre-payment inconsistent with the original parties' intent</u>.

Next, the Trust argues that "[n]o contractual provision has been identified as being breached," contending that its "refusal to agree with Borrower's calculation of the pre-payment premium does not constitute a breach of any provision in the notes." (Def.'s Br. 7-8.) The Court, however, has already considered and rejected this argument on two previous occasions. (*See*

Summ. J. Order 11-13; Trial Order 20-21.)

As this Court has previously explained, citing *Franconia Associates. v. United States*, 536 U.S. 129, 142 (2002), in support, if a borrower has the right to pre-pay a loan, then the lender has a corresponding obligation to accept pre-payment. (*See* Trial Order 21.) Therefore, the Trust's breach occurred when the Borrowers' attempts at pre-payment were rejected. (*See* Trial Order 21 (citing *Franconia*, 536 U.S. at 142-43).) The Trust now attempts to distinguish *Franconia*, arguing that there the notes provided that pre-payments, whether full or partial, could "be made at any time at the option of [b]orrower." (Def.'s Br. 7 (citing *Franconia*, 536 U.S. at 135).) The Trust's argument, however, raises a distinction without a difference. Similar to the notes in *Franconia,* the notes here afforded the Borrowers the right to pre-pay at any time upon thirty days' notice, and thus the breach occurred when the Trust rejected the Borrowers' attempts to pre-pay upon thirty days notice. (Trial Order 9.)

The Trust also breached the notes when it insisted on an excessive pre-payment premium calculated with a methodology that was inconsistent with the original contracting parties' intent. (Trial Order 21.) Indeed, "[a] statement of intention not to perform except on conditions which go beyond the contract constitutes a repudiation." *Franconia*, 536 U.S. at 143 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 250 cmt. b). Therefore, the Trust's rehash of its argument that "[n]o contractual provision has been identified as being breached" is unavailing.

E. <u>The Trust's purported "good faith" is not a defense to breach of contract</u>.

Not to be deterred, the Trust argues that it cannot, as a matter of law, be liable for breach of contract because it disputed in "good faith" with the Borrowers about the meaning of the pre-payment premium. (Def.'s Br. 8.)

In advancing this argument, the Trust relies upon a Sixth Circuit case applying Tennessee law, *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 191 F.3d 675, 683 (6th Cir. 1999), and an Illinois state law case applying Illinois law, *Halpern v. McLaughlin*, 212 N.E.2d 122, 125 (Ill. App. 1965). Here, however, the applicable substantive law governing the dispute is that of Indiana, Michigan, and Pennsylvania, and the Trust has not produced *any* case interpreting the law of these states that suggests "good faith" is a defense to a breach of contract action. "Judges are not required to attempt to find authority in support of a party's undeveloped argument, and the Court respectfully declines to do so here." *Inskeep v. Griffin*, No. 05 C 1834, 2008 WL 192322, at *7 n.2 (N.D. Ill. Jan 3, 2008) (citing *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 551 (7th Cir. 2004)); *see United States v. Hook*, 195 F.3d 299, 310 (7th Cir. 1999) ("In order to develop a legal argument effectively, the facts at issue must be bolstered by relevant legal authority . . . ."); *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986) (articulating that a failure to cite relevant legal authority constitutes a waiver for lack of development).

In any event, "in contract actions the defendant's motive or state of mind is of no moment . . . ." *Burleson v. Ill. Farmers Ins. Co.*, 725 F. Supp. 1489, 1495 (S.D. Ind. 1989); *see also Nationwide Mut. Ins. Co. v. Neville*, 434 N.E.2d 585, 595 (Ind. App. 1982) (discussing damages in a breach of contract action that arose from "a good faith dispute as to what a contract requires of a party"). "[G]ood-faith differences between the parties as to the scope of their contractual undertakings do not relieve either party of his or her duty of performance." 14 WILLISTON ON CONTRACTS § 43:5 (4th ed.) "Generally, a party acts at his peril if, insisting on what he mistakenly believes to be his rights, he refuses to perform his duty." 23 WILLISTON ON

14

CONTRACTS § 63:48 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 250 cmt. d). Therefore, the Trust's "good faith" argument is another non-starter.

F. <u>The Borrowers suffered damages as a result of the Trust's breach of contract</u>.

The Trust next contends that the Borrowers did not, as a matter of law, suffer any damages "proximately caused" by the Trust, asserting that the Borrowers created their own injury by failing to pre-pay. That is, the Trust suggests that the Borrowers' damages were caused by the Borrowers' own election not to pre-pay during the first ten years. (Def.'s Br. 9.)

The Trust is, once again, revisiting another of its prior unsuccessful arguments in which it attempted to split hairs. (*See* Summ. J. Order 13-14.) The evidence at trial firmly established that the Trust rejected the Borrowers' pre-payment notice (Trial Order 10-11, 21, 26), and that this rejection caused the Borrowers to suffer damages (Trial Order 26-27). *See generally INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 582 (Ind. Ct. App. 2003) (stating that causation is normally question of fact for the factfinder); *Montcalm Fibre Co. v. Advanced Organics*, No. 249642, 2005 WL 957425, at *5 (Mich. Ct. App. Apr. 26, 2005) (same); *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1163 (Pa. 2010) (same).

As this Court has opined, "[i]t is well-established that the law does not require a party to perform futile acts." (Summ. J. Order 12 (citing *Tri-Olm v. Buys*, No. 270347, 2008 WL 4277462, at *3 (Mich Ct. App. Sept. 18, 2008)).) "Tendering a payment certain to be rejected is a futile act." (Summ. J. Order 12 (citing *N. Side Asphalt & Material Transp. Inc. v. Foreman*, 520 N.E.2d 457, 459 (Ind. Ct. App. 1988); *Stefanac v. Cranbrook Educ. Cmty.*, 458 N.W.2d 56, 68 n.6 (Mich. 1990) (Levin, J., dissenting); *Sunseri v. Mancuso*, 66 A.2d 830, 830 (Pa. 1949); *Messina v. Silberstein*, 528 A.2d 959, 961-62 (Pa. Super. Ct. 1987)).)

Accordingly, the Trust's sixth argument fares no better than its foregoing arguments.

G. <u>The Court's damages award in favor of the Borrowers was not "improper."</u>

The Trust also argues that the Court's damages award was "improper," contending that it was based on "speculation or conjecture" and affords the Borrowers "double recovery." (Def.'s Br. 9.) As with its other arguments, the Trust's challenge to the Court's damages award does not warrant the relief it seeks.

"A party injured by a breach of contract may recover the benefit of the bargain." *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.*, 814 N.E.2d 649, 658 (Ind. Ct. App. 2004); *Van Dyke Liquor Mkt., Inc. v. Mich. Basic Prop. Ins. Ass'n*, No. 278892, 2008 WL 4724675, at *1 (Mich. Ct. App. 2008); *Mirizio v. Joseph*, 4 A.3d 1073, 1088 (Pa. Super. 2010). In that vein, a court may award damages "when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made." *Indianapolis City Mkt. Corp. v. MAV, Inc.*, 915 N.E.2d 1013, 1024 (Ind. Ct. App. 2009) (citing *Hadley v. Baxendale*, 156 Eng. Rep. 145 (1854)); *City of Flint v. Greater Eastside Cmty. Ass'n*, No. 271822, 2007 WL 2962843, at *3 (Mich. Ct. App. Oct. 11, 2007); *Helpin v. Trs. of Univ. of Pa.*, 10 A.3d 267, 270 (Pa. 2010). Of course, the amount of the loss must "be ascertained with the relative degree of certainty and based upon proper evidence" and not on the "mere basis of conjecture and speculation." *Indianapolis City Mkt.*, 915 N.E.2d at 1024-25; *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 852 (Mich. Ct. App. 2005); *Dillow v. Myers*, No. 00-2100, 2005 WL 4923687, at *243 (Pa. Com. Pl. Nov. 22, 2005).

Here, the damages awarded by the Court—the amount of interest that it paid to the Trust after the breach over and above what it would have paid to another lender—naturally flowed

from the breach and enabled the Borrowers to recover the "benefit of the bargain." *Berkel*, 814 N.E.2d at 658. Contrary to the Trust's assertion, the award was based upon proper evidence produced by the Borrowers, not conjecture or speculation, and was ascertained with "a relative degree of certainty." *Indianapolis City Mkt.*, 915 N.E.2d at 1024-25.

Moreover, the Trust's assertion that an award of prejudgment interest prior to September 1, 2009, would result in a "double recovery" or "interest on interest" to the Borrowers is unpersuasive. The Court fails to see how the damages award comprised of the "excess interest" paid by the Borrowers from October 1, 2007, to September 1, 2009, incorporates any compensation for the time value of money. Nor does the Trust cite to any portion of the record to evidence its assertion. Rather, it is clear that without an award of prejudgment interest, the Borrowers will not be "made whole," as they would be compensated only in today's dollars for their loss of the use of "excess interest" paid several years earlier. *See Matter of Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1333 (7th Cir. 1992) ("Prejudgment interest is an element of damages—it is used to make the victim whole."); *Ziaee v. Vest*, 916 F.2d 1204, 1208 (7th Cir. 1990) ("Prejudgment interest compensates the prevailing party for the loss of use of money during the time between the wrong and the conclusion of the litigation."); *Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 274 (7th Cir. 1993) ("Money has a time value, and prejudgment interest is therefore necessary in the ordinary case to compensate a plaintiff fully for a loss suffered at time t and not compensated until $t + 1, 2, 3 \ldots n$."). Therefore, the Trust's arguments with respect to the Court's damages award are without merit.

H. <u>The Borrowers satisfied the condition precedent of sending notice of pre-payment</u>.

Next, the Trust alleges that the Borrowers failed to satisfy the condition precedent of

17

sending thirty days notice of pre-payment. As the Trust sees it, although the Borrowers sent a letter that they contend is a pre-payment notice, the letter was "expressly conditioned on the Trust's agreement with a pre-payment calculation under an ambiguous provision," which it claims rendered the notice ineffective. (Def.'s Br. 11.)

Of course, this argument is yet another of the Trust's contentions that the Court has already twice considered and rejected. (Summ. J. Order 7-10; Trial Order 23-24.) To reiterate, the contract did not specify the form or content of the notice, nor did it indicate that the notice must include payment terms. (Trial Order 10.) Moreover, the notice that the Borrowers provided was captioned, "<u>Pre-payment Notice</u>," and in its first line stated that the Borrowers "intend to pre-pay all of the Loans." (Trial Order 10 (citing Second Firth Aff., Ex. 7).) Therefore, as the Court previously concluded, the Borrowers informed the Trust that they intended to pre-pay the notes at least thirty days before payment, which was all the contract required. Consequently, the Trust's third parroting of this argument fares no better than its prior two attempts.

I. <u>The Trust failed to prove its affirmative defenses at trial</u>.

Next, the Trust contends that the evidence conclusively established, or alternatively, the great weight of the evidence supports, its two affirmative defenses: (1) that the Borrowers waived any purported breach by paying the notes in accordance with their terms, and (2) that the Borrowers' prior material breach bars any alleged breach by the Trust.

As to the waiver defense, the Court "unequivocally rejected" this argument on two prior occasions. (Summ. J. Order 15-16; Trial Order 24-25.) Nevertheless, the Trust does not point to any new facts or case law to cause the Court to reconsider its prior rulings. As the Court previously opined, "the Trust has not provided, nor has the Court discovered, any cases

18

suggesting that instituting a suit to enforce a contractual right amounts to a voluntary and intentional waiver of that right." (Trial Order 25); *see generally Coover v. Saucon Valley Sch. Dist.*, 955 F. Supp. 392, 406 n.12 (E.D. Pa. 1997) ("Waiver is a voluntary and intentional relinquishment or abandonment of a known right."); *United States v. Hodgekins*, 832 F. Supp. 1255, 1259 (N.D. Ind. 1993) (same); *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (Mich. 2003) (same).

Likewise, the Court previously rejected the Trust's assertion that the Borrowers materially breached the contracts first when they failed to pre-pay in accordance with their pre-payment notices. (Summ. J. Order 12-13; Trial Order 25-26.) As the Court noted in its prior Order, this argument significantly spins the circumstances surrounding the attempted pre-payment. (Trial Order 26.) The Borrowers did not simply "fail[] to pre-pay in accordance with their purported notice." (Def.'s Br. 12.) Rather, the Trust *first* unequivocally rejected their pre-payment notice and, accordingly, *first* breached the contracts by insisting on an excessive pre-payment premium. (Trial Order 26.)

J. <u>The Trust's remaining arguments are perfunctory, undeveloped, and unsupported</u>.

The Trust also presents a laundry list of various factual findings by the Court that the Trust contends "there is no evidence to support" or are "against the great weight of the evidence." (Def.'s Br. 6.) The Trust, however, fails to cite *any* contrary evidence from the trial record in support of their conclusory assertions. *See generally Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 447-48 (7th Cir. 2006) ("A district court's findings of fact made after a full bench trial are entitled to great deference and shall not be set aside unless they are clearly erroneous."). Moreover, most of what the Trust seems to challenge are proper and reasonable

inferences drawn from the evidence, something the Court, as the finder of fact, is permitted to do. *See, e.g.*, *Smith v. Borg-Warner Auto. Diversified Transmission Prods. Corp.*, No. IP 98-1609-C-T/B, 2000 WL 1006619, at *8 (S.D. Ind. July 19, 2000) ("[T]he drawing of reasonable inferences from the evidence is for the trier of fact . . . ."). The Trust also tacks on several undeveloped arguments at the end of its motion rehashing various conclusions of law and requesting that attorney's fees be awarded. Of course, perfunctory and undeveloped arguments are deemed waived. *See United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .").

As to the Trust's request for attorney's fees, it too is without merit. Not only did the Trust lose at trial, but the Court already concluded in its Opinion and Order dated March 23, 2010, that the Trust's defense of this breach of contract action does not constitute "enforcing" its rights under the terms of the notes. (Docket # 142.) Thus, as with most of the other arguments in this motion, the Trust's request for attorney's fees merely rehashes another of its prior unsuccessful contentions, which falls woefully short of warranting relief under Rules 52(c) or 59(a). *See Bosch*, 2007 WL 2572383, at 3-4.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment as a Matter of Law Under Rule 52(c) or, Alternatively, for a New Trial Under Rule 59(a) (Docket # 224) is DENIED.

SO ORDERED. Entered on the 14th day of October, 2011.

S/Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge
